<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>                Plaintiff,<br><br>v.<br><br>ZEPHYROS LIMITED,<br><br>                Defendant. | Adv. Pro. No. 12-01278 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

<u>A P P E A R A N C E S</u> :

*Attorneys for Defendant, Zephyros Limited.*
O'Melveny & Meyers LLP
7 Times Square
New York, NY 10036
By:    William J. Sushon
         Daniel S. Shamah
         Kayla N. Haran

*Special Counsel for Irving H. Picard, Trustee for the Substantively*
*Consolidated SIPA Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Windels Marz Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
By:    Howard L. Simon
       Robert J. Luddy
       Kim M. Longo
       Alex Jonatowski

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Zephyros Limited, ("Zephyros"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property.  Defendant seeks dismissal for failure to plausibly allege that redemptions were BLMIS property.  Defendant has raised the defenses of good faith, the "safe harbor," and statute of limitations.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has not been contested by Defendant.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

Defendant Zephyros is a corporate entity incorporated under the laws of the Cayman Islands. (Am. Compl. ¶ 50, ECF[1] No. 124).  It is a propriety hedge fund, owned and managed by Credit Suisse Group AG.  (*Id.* ¶ 4).  Zephyros had no employees of its own, and its only operations were investments in BLMIS feeder funds and other hedge funds.  (*Id.* ¶ 52).  All investments were linked to the Credit Suisse/Tremont Hedge Fund Index ("CS/Tremont Index"). (*Id.*).  The CS/Tremont Index was formed in 1999 and owned by a partnership of Credit Suisse and Tremont Group Holdings ("Tremont Group" or "Tremont").  (*Id.* ¶ 53).

Zephyros's purpose was to serve as a vehicle for investments in hedge funds tracked by the CS/Tremont Index.  (*Id.* ¶ 54).  Defendant, like other investment vehicles created by Credit Suisse, was operated by the Credit Suisse Manager from New York.  (*Id.*).

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01278-cgm.

This adversary proceeding was filed on April 5, 2012.  Via the amended complaint ("Complaint"), the Trustee seeks to recover over $95 million in subsequent transfers made to Zephyros.  (Am. Compl. ¶¶ 1–2).  The subsequent transfers were derived from investments with BLMIS made by Rye Select Broad Market Portfolio Limited ("Rye Portfolio Limited").  (*Id.* ¶ 2).  Defendant is alleged to have knowingly directed funds to be invested with and redeemed from Rye Portfolio Limited[2].  (*Id.* ¶ 66).

The Tremont Group created, owned, managed and operated the Rye feeder funds out of Rye, New York, including Rye Portfolio Limited.  (*Id.*).  Rye Portfolio Limited is considered a "feeder fund" of BLMIS because the intention of the fund was to invest in BLMIS.  (*Id.* ¶¶ 2, 66).  The Tremont Group was Zephyros's primary contact with Rye Portfolio Limited.  (*Id.* ¶ 69).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Rye Portfolio Limited and related defendants that were managed by Tremont to avoid and recover fraudulent transfers of customer property in the amount of approximately $2.1 billion.  (*Id.* ¶¶ 79, 151).  In 2011, the Trustee settled with the Tremont defendants, including Rye Portfolio Limited.  (*Id.* ¶ 152).  As part of the settlement, the Tremont defendants consented to a judgment in the amount of $1.025 billion.  (Order, Adv Pro. 10-05310-brl, ECF No. 38).  The settlement provides that the Trustee may seek additional recovery from any non-settling defendant or subsequent transferee.  (*Id.* at 6).

The Trustee alleges that BLMIS made initial transfers to Rye Portfolio Limited of approximately $620 million, including $609 million made within six years of the filing date and $350 million made within two years.  (Am. Compl. ¶¶ 153–54).  The Trustee has alleged that

---

[2] The Complaint also alleges that Defendant directed Funds to be invested with BLMIS through Kingate Global Fund Limited and through Fairfield Sentry Limited. (Am. Compl. ¶ 67).

based on its investigations $95,385,159 of money transferred from BLMIS to Rye Portfolio

Limited was subsequently transferred to Zephyros.  (*Id.* ¶ 157).

In its motion to dismiss, Zephyros argues that the Complaint fails to allege that

Defendant received BLMIS customer property, that Defendant is entitled to the good-faith

defense, that the safe harbor under Section 546(e) bars most of the claims, and that the Statute of

Limitations bars recovering newly pleaded transfers alleged in the Amended Complaint.

The Trustee opposes the motion to dismiss.

Oral arguments were held on December 14, 2022.  (H'rg Tr. Dec. 14, 2022, ECF No.

146).  On that date, Defendant raised for the first time whether the Tremont Group's knowledge

of the fraud may be imputed to the various Rye funds.  (*Id.* 50:13–20).  Parties submitted

supplemental memoranda with respect to this issue.  (Suppl. Mems., ECF Nos. 150–51).

## Discussion

**Relation Back and Statute of Limitations**

The Complaint, (Am. Compl. ECF No 124), alleges $22 million in subsequent transfers

not alleged in the complaint originally filed on April 5, 2012 ("Original Complaint").  (Original

Compl. ECF No 1).  Zephyros argues that the Trustee's new allegations of subsequent transfers

do not "relate back" to the initial pleading and are, therefore, time barred.  (Def.'s Mem. 19, ECF

No. 130).  Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original

pleading when . . . the amendment asserts a claim or defense that arose out of the conduct,

transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed.

R. Civ. P. 15(c)(1)(B).  Rule 15 "does not set a high bar for relation back, so long as the claims

attempted to be asserted in the new complaint share a reasonable measure of common ground

with the allegations in the original pleading." *Picard v. Peter Madoff (In re BLMIS)*, 468 B.R.

620, 633 (Bankr. S.D.N.Y. 2012) ("*Peter Madoff*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007)).  Rule 15(c) should be "liberally construed."  *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215 (2d Cir. 1983).  This is because "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." technicalities)  *Picard. v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021) (quoting *Siegel*, 714 F.2d at 217).  Thus, "[t]he principal inquiry . . . is whether the general fact situation alleged in the original pleading provides adequate notice to the opposing party of the matters raised in the amended pleading." *Peter Madoff*, 468 B.R. at 633 (quotations omitted).

New fraudulent transfer claims relate back to the original pleading where the newly alleged transfers occurred as part of the "same 'course of conduct'" as the originally alleged transfers.  *Peter Madoff*, 468 B.R. at 633 (citing *Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009)).  When examining "conduct" under Rule 15, courts typically analyze whether "the new transfers occurred as part of the same course of conduct as the transfers alleged in the original complaint," and whether "the original complaint gave sufficient notice to the defendants that the Trustee may sue for additional transfers that were part of the same course of conduct."  *Hill v. Oria (In re Juliet Homes, LP)*, Bankr. No. 07-36424, Adv. No. 09-03429, 2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011) (citations omitted) (cleaned up).

The two additional transfers relate back to the Original Complaint.  The Original Complaint states:

> The Trustee seeks to recover subsequent transfers of Customer Property from BLMIS feeder funds Kingate Global Fund, Ltd. ("Kingate") and Rye Select

Broad Market Portfolio Limited (f/k/a American Masters Broad Market Fund II Limited) ("Rye Select") to Zephyros totaling $114,943,096. Charts setting forth the subsequent transfers from Kingate and Rye Select to Zephyros are attached here as Exhibits D and I, respectively.

(Original Compl. ¶ 2, ECF No. 1.).  Of the total sought in the original complaint, The Trustee alleged that $73,385,159 was transferred from Rye Portfolio Limited to Zephyros.  (Original Compl. Ex. I, ECF No. 1).  The complaint goes on to state: "The Trustee's investigation is ongoing, and he reserves the right to: (i) supplement the information on the Rye Select Initial Transfers and Rye Select Subsequent Transfers; and (ii) seek recovery of any additional transfers."  (Original Compl. ¶ 61, ECF No. 1).

As this Court stated, about a similarly situated defendant, "Defendant[] had over 10 years notice that they would be asked to account for these transfers."  *Picard. v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *13 (Bankr. S.D.N.Y. Aug. 6, 2021).  This Court stated that:

> the Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they were effected. The Moving Defendants are a group of interrelated individuals and entities .... Whether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond.

*Id.* (citing *Picard v. Chais* (*In re BLMIS*), 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011).  Zephyros was adequately apprised that the Trustee intended to collect any additional subsequent transfers that were uncovered.  The new transfers "relate back" and are properly brought.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S.

at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

    In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

    The Trustee is seeking to recover subsequent transfers made to Defendant by Rye

Portfolio Limited. (Am. Compl. ¶ 2, ECF No. 124).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a).  "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013).  "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Rye Portfolio Limited is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005).  The Trustee is free to pursue any of

the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706–07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer from BLMIS to Rye Portfolio Limited by adopting by reference the entirety of the complaint filed against Tremont and related defendants in adversary proceeding 10-5310 ("Tremont Complaint") and through additional allegations in the Complaint.  (Am. Compl. ¶ 79, ECF No. 124) ("The Trustee incorporates by reference the factual allegations in the Tremont Complaint.").  Whether the Tremont Complaint properly pleads the avoidability of the initial transfer is governed by Rule 9(b).  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

Defendant objected to the Trustee's incorporation by reference of the Tremont Complaint at the hearing on December 14, 2022.  (H'rg Tr. Dec. 14, 2022, 51:22–52:18, ECF No. 146). Zephyros initially conceded that the Tremont Complaint, if properly incorporated, would satisfy the Trustee's burden concerning knowledge of the initial transferee and imputation of knowledge from Tremont to Rye Portfolio Limited.  (*Id.* 52:1–4) ("It does [provide detailed allegations about the Rye-Tremont relationship].  I will readily concede that.  If Your Honor accepts the

incorporation by reference argument, that they probably satisfied at least the pleading stage, that issue.")  Defendant argued that incorporation would be "problematic" here as the Trustee's complaint was amended to include "pages and pages and pages of knowledge allegations against Tremont." (*Id.* 52:8–11).

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c).  Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  The district court found that adoption by reference of the entire Fairfield Complaint is proper in related Fairfield Sentry proceedings.  *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Tremont Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *Perez v. Terrastar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings

filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

 Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. Zephyros is aware of what has been filed in the other adversary proceeding in this SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. (*See* Mem., ECF No. 61) (moving to dismiss based on extraterritoriality ruling from the district court).

Allowing the Trustee to incorporate the Tremont Complaint by reference, does not prejudice Defendant. If the Court were to dismiss this Complaint and permit the Trustee to amend his Complaint to include all of the allegations that are already contained in the Tremont Complaint, all parties would be prejudiced by delay in these already, overly-prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Defendant argues that neither the Tremont Complaint nor the allegations contained in the Complaint here properly plead that the transfers were of customer property and that the initial transfers were avoidable. (Def.'s Reply 11–14, ECF No. 136).

**BLMIS Customer Property**

The Trustee has pleaded that, based on its investigations to date, "the transfers to Defendant [from Rye Portfolio Limited] total at least $95,385,159." (Am. Compl. ¶ 157). The exhibits attached to the Complaint provide Defendant with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); (Am. Compl. Ex. C) (indicating the dates and amounts of the transfers to the defendants); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing for failure to plausibly imply that the initial transferee made any subsequent transfers.). The Complaint alleges that since Rye Portfolio Limited "invested all or substantially all of its assets into the BLMIS Ponzi scheme," all property it transferred to Defendant was BLMIS Customer Property. (Am. Compl. ¶ 160).

Defendant argues that the Trustee must tie each of "those transfers to the payment of [a] redemption request from Zephyros." (Def.'s Opp'n 8, ECF No. 130). In order to ultimately determine how the initial and subsequent transferees spent the millions of dollars they received from BLMIS, this Court would need to review financial documents in order to trace the BLMIS monies to all of the initial transferees' principals, insiders, creditors, and customers. Undoubtedly, the Court will do this tracing and calculation at a later stage of litigation. At this stage, the Trustee need only assert plausible allegations that Defendant received BLMIS monies.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendant received customer property.

**Section 546(e) does not bar the avoidance of the Initial Transfers to Rye Portfolio Limited**

Section 546(e) protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for

the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer—those transfers from BLMIS to the feeder funds. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018). Subsequent transferees are also entitled to raise a § 546(e) defense against Trustee's recovery of the initial transfer funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021). To the extent that the safe harbor bars the Trustee from collecting the initial transfer, he would also be barred from collecting any subsequent transfers.

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers qualified as payments made "in connection with" securities contracts between BLMIS and its customers. *See Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d Cir. 2014). However, the safe harbor does not apply, by its plain terms, to transfers where the transferee is complicit in BLMIS' fraud. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). This is because "any transferee who knew the transfers it received from Madoff Securities contained only stolen proceeds also knew those transfers were neither settlement payments [n]or transfers in connection with a security agreement" and therefore, § 546(e) cannot apply.[3] *Id.*

> The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a

---

[3] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out any atextual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)). By holding that the affirmative defense provided by § 546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do not prevent the Trustee from clawing back complicit parties' ill-gotten gains. The district court has already determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *Cohmad*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds the district court's holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

Zephyros has also raised the safe harbor defense in connection with its contract with Rye Portfolio Limited.  Whether the safe harbor applies to the initial transfers under the theory that BLMIS' transfers to the initial transferees were made in connection with different contracts (rather than the contracts with BLMIS) is not answerable on the pleadings.  If such a fact-specific determination is needed, the Court will make it with the benefit of a "full factual record."  *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov. 3, 2022).

**The Trustee Has Pled that the Initial Transferees had Actual Knowledge that BLMIS was Not Trading Securities**

Here the Trustee has pleaded allegations of the Tremont Group's actual knowledge that no securities were being traded.  (Am. Compl. ¶¶ 79–150); Tremont Compl., Adv. Pro. 10-05310, ¶¶ 35–51, 83–274, ECF No. 1.  Defendant has objected to imputation of the Tremont Group's knowledge to Rye Portfolio Limited.

At this stage, before the Trustee has had an opportunity to conduct discovery with respect to the purported agency relationship between Rye Portfolio Limited and the Tremont Group, "the question is not whether [the Trustee] ha[s] proved the existence of an agency relationship, merely whether [he] should have the chance to do so." *Picard v. Merkin* (*In re BLMIS*), 440 B.R. 243, 260 (Bankr. S.D.N.Y. 2010) (quoting *In re South African Apartheid Litig.*, 617 F. Supp. 2d 228, 273 (S.D.N.Y. 2009)).  The Rye funds, including Rye Portfolio Limited, were funds operated by Tremont.  (Am. Compl. ¶ 66).  The various Rye funds had no employees of their own and acted through Tremont Group officers who operated the Rye funds. (Am. Compl. ¶ 50, ECF 124); (Tremont Compl., Adv. Pro. 10-05310, ¶¶ 47, 50, ECF No. 1).  Rye Portfolio Limited is not natural a person and, as such, act only through "the instrumentality of their officers or

other duly authorized agents." *45 John Lofts, LLC v. Meridian Capital Grp., LLC* (*In re 45 John Lofts, LLC*), 599 B.R. 730, 743 (Bankr. S.D.N.Y. 2019). An agent's knowledge and acts are imputed to a corporate defendant. *Id.* Reading the Complaint as a whole and taking all allegations as true, the Trustee has sufficiently pleaded that the Tremont Group's knowledge was imputed to Rye Portfolio Limited in the Complaint.

The Tremont Complaint alleges that the Tremont Group was repeatedly advised of BLMIS trading impossibilities and other indicia of fraud. (Tremont Compl., Adv. Pro. 10-05310, ¶ 158, ECF No. 1) (2003 email alerting Tremont management to BLMIS practices consistent with fraud); (*id.* ¶ 194) (Internal Tremont email scoffing at potential investor "concerned about Tremont's relationship with Madoff, saying that there was no transparency there and that it was prone to a blow-up that would destabilize Tremont. . . ."); (*id.* ¶ 194) (Tremont more concerned with "feeding 'a lot of money' to Madoff, as opposed to actually understanding what Madoff was doing with that money"); (*id.* ¶ 197) (client unable to reconcile different results from investments with BLMIS directly versus through a Rye fund); (*id.* ¶ 215) (internal Tremont emails questioned use of auditor to investigate BLMIS). Tremont officers failed to confirm or question information given to it by Madoff regarding the counterparty to trades and "at times also falsely led others to believe they knew the counterparties." (*Id.* ¶ 190). "The Rye Funds received trade confirmations from BLMIS reflecting securities transactions that could not have occurred, because they took place outside of the range of stock and options prices for such securities traded in the market on the days in question." (*Id.* ¶ 181). Tremont failed to question over 600 instances of this out-of-range information. (*Id.* ¶¶ 181–83).

The Complaint supplies additional allegations of the Tremont Group's knowledge of BLMIS's fraud. Sandra Manzke, Tremont's founder and former CEO, had regular meetings and

calls with Madoff and Frank DiPascali. (Am. Compl. ¶ 82–83, ECF No. 124). Robert

Schulman, as co-CEO and then sole CEO of Tremont, touted his "special relationship" with

Bernard Madoff and how "intimately familiar" he was with Madoff. (Am. Compl. ¶ 83). Others

described this relationship in similar terms. In 2003, Tremont told its auditor, Ernst & Young,

that "Bob Schulman periodically visits [BLMIS's] facilities throughout the year . . ." and in June

2006, a Tremont vice president informed a potential investor that Schulman was "'intimately

familiar' with Madoff based on 'a 10+ year relationship.'" (*Id.*). An investor in two Tremont

feeder funds wrote to Schulman to 2001, "I know you are sick of answering this but man is it hot

out there with the Bernie [Madoff] fraud rumors." (*Id.* ¶ 85). In 2007, a potential client met with

officers of Tremont and discussed whether BLMIS's business was fraudulent and perhaps a

Ponzi scheme. (*Id.* ¶ 93). When the potential clients followed up by email with questions about

BLMIS, a Tremont officer responded internally that they should "give answers by phone rather

than email . . . ." (*Id.* ¶ 94).

Tremont continued to receive warnings from potential investors who were concerned

about whether Madoff's strategy involved "trades actually tak[ing] place." (*Id.* ¶ 97). Tremont's

own reports showed that BLMIS's reported trades were impossible. (*Id.* ¶ 98). Tremont's

estimates showed that there was "insufficient volume for dozens, if not hundreds of the trades

Madoff purported to complete." (*Id.* ¶ 99). Tremont chose to shield BLMIS from inquiries,

"with fabrications of its own, which changed depending on who was asking." (*Id.* ¶ 130). All of

this was overlooked because Tremont, admittedly, made a lot of money for doing nothing other

than allowing investors access to BLMIS. (*Id.* ¶ 140–144).

Here, the Trustee has sufficiently plead Rye Portfolio Limited had actual knowledge that

BLMIS was not trading securities, which makes the safe harbor inapplicable by its express terms.

*Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

The Trustee has adequately pleaded, with particularity, the avoidability of the initial transfers due to Tremont's knowledge of BLMIS' fraud. (Am. Compl. ¶¶ 79–150). The Complaint and the Tremont Complaint, incorporated by reference, contain sufficient allegations of the initial transferee's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion.

**Other Defenses**

Zephyros raised the "good faith defense" under section 550(b). "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). "Not only must the facts supporting the

defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion

may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d

Cir. 2004) (cleaned up). A "plaintiff is entitled to all reasonable inferences from the facts

alleged, not only those that support his claim, but also those that defeat the [affirmative]

defense." *Id.*

Zephyros argues that it "took for value, in good faith, and without knowledge of the

voidability of the transfer." (Def.'s Mem. 8–9, ECF No. 130).

### *i.* **For Value**

The "value" that a subsequent transferee must provide is "merely consideration sufficient

to support a simple contract, analogous to the 'value' required under state law to achieve the

status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special

Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In

addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than

what the transferor received. The Complaint contains no mention of Defendants exchanging

shares for consideration. (Am. Compl. ¶¶ 157–65, ECF No. 124). Therefore, the "value"

defense is not asserted on the face of the Complaint.

Defendant argues that the payments it received from Rye Portfolio Limited were given in

exchange for the redemption of shares in that fund. If Defendant knew at the time it redeemed

its shares that the shares were worthless, then they did not receive the subsequent transfer funds

"for value" as is required under § 550. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam

(In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield*

*Sentry Lt*d. v. Citibank, N.A. London, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y.

Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received

redemption payments with the knowledge that the NAV was wrong.  In those circumstances, the

Liquidators may seek to impose a constructive trust.").  It has not yet been determined whether

Defendant knew if the shares it redeemed from Rye Portfolio Limited had value.

     "Value" is Defendants' burden to plead and prove.  *Picard v. BNP Paribas S.A.* (*In re

BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018).  Whether Defendant gave value is a

question of fact to be resolved either at the summary judgment stage or at trial.  *Picard v.

Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL

3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

### ii.  *Good Faith*

     The District Court recently explained that the good faith inquiry is a fact-intensive one

that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.*]

*Citibank*[*, N.A. (In re BLMIS*), 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28,

2022),] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a

case-by-case basis, which naturally takes into account the disparate circumstances of differently-

situated transferees.'"  *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And

that "such a fact-based determination can only be made based on the entirety of the factual

record after discovery . . . ."  *Id.* (internal quotation omitted).

     Given the allegations of Defendant's connections to both Credit Suisse and the Tremont

Group, it is plausible that discovery will reveal Zephyros had knowledge of BLMIS' fraud—

either independently or via its relationship with Credit Suisse and the Tremont Group.  In any

case, the burden of proving good faith falls squarely on Defendant, and this Court cannot make a

determination on Defendant's affirmative defense until after a fact-intensive inquiry.

### iii. Knowledge of the Voidability

Good faith is linked with whether one had knowledge of the voidability of the transfer.

*Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does

not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of

the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d

217, 142 S. Ct. 1209 (2022). Having determined that "good faith" cannot be found on the face of

a complaint, the Court must deny Defendant's motion on this element. Additionally, § 550(b)(1)

provides a defense to recovery making lack of knowledge Defendant's burden to plead and

prove. It is a fact-intensive inquiry that requires a three-step inquiry into what Defendant

subjectively knew; "whether these facts put [Defendant] on inquiry notice of the fraudulent

purpose behind a transaction—that is, whether the facts the transferee knew would have led a

reasonable person in the [the] position to conduct further inquiry into a debtor-transferor's

possible fraud; and whether "diligent inquiry by [Defendant] would have discovered the

fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the

litigation. The Complaint does not support Defendant's affirmative defense of good faith on its

face.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris

_____

**Dated: February 13, 2023**
**Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**